We have three cases on today's oral argument calendar. The first is cause number 22-40707, United States of America v. Team Finance. This case is about whether the public has any way to vindicate their common law and First Amendment right of access to court records, which in this case detail a private equity company's fraudulent billing practices in emergency rooms across the country. The Supreme Court has said that members of the public must have an opportunity to be heard on their denial of access to court proceedings, but if the district court's reasoning is adopted, it will eliminate any means for members of the public or press to assert their right of access. In denying Adler's motion to intervene to unseal, the district court committed three legal errors. First, it improperly required Adler to establish Article III standing and incorrectly held that he didn't allege Article III standing. Second, it found that seeking to vindicate a common law and First Amendment right to access is not a claim for the purposes of 24B, spill it in with every other court to decide the issue. And finally, in assessing timeliness, the district court improperly treated Adler's motion to intervene to unseal as a motion to intervene on the merits and set a deadline to the public's right of access, despite this court's recognition that the right of access is continuous and exists long after a case is closed. On the first issue, Adler does not need to establish Article III standing. This court held in Ruiz v. Estelle that an intervener does not need to establish Article III standing if the court already has authority or jurisdiction to grant the specific relief that that intervener is seeking. Here, there's no dispute that the district court had authority or an inherent supervisory power to unseal its own court records even after the case had closed. The district court relied on dicta, one sentence of dicta in this court's decision in Newby, which in turn cites Taddeus, suggesting that if a case closes, an intervener does need to unseal. What is the difference in this case from Taddeus as far as unsealing a record is not sole purpose? That's correct, Your Honor. So in Taddeus, the interveners had pending litigation against the defendants, and they never invoked a common law right of access or a First Amendment right of access. They wanted the documents for their own purposes in their own litigation, and the court held that because they didn't invoke a right of access and because they could access the very documents they wanted through discovery in their own litigation, that they would reject the motion to intervene in Taddeus. It's also important to note that the court further clarified the question of when a litigant needs Article III standing or an Article III standing after Taddeus. In Taddeus, those were three sentences of an opinion dealing with the motion to intervene. But in Ruiz v. Estelle, there's a long decision talking about how Article III exists to ensure that the court is acting within its jurisdiction, within its legal authority, and it doesn't exist to limit the litigants that can be heard in a case. And that's why in Ruiz, Texas legislators were able to intervene without Article III standing, because the court already had authority to grant the specific relief that they sought, and the same is true here. Even if this court decided that Adler did need Article III standing, he clearly alleged it, and he did so in two ways. First, he alleged simply that he was denied access to court records that he has a legal right to, a common law and constitutional right of access, which is itself a sufficient injury. This court has held as much in Ford that the denial of access to information you have a legal right to constitutes a concrete injury, and so has every other circuit to decide this issue, including specifically the First, Third, Fourth, Seventh, and Eleventh. But Adler went even further here. He didn't just allege denial of access to information he has a legal right to. He alleged that denial of access to this information impeded his research, writing, and thinking on an issue that was the focus of his professional career and of great public importance. This court's standing analysis doesn't need to be any different than it was in Davis, where this court held that intervening news agencies had standing to challenge confidentiality orders that impeded their ability to gather news and discover information about a desegregation plan. On the second issue, Adler also satisfies Rule 24B. There are two prongs to Rule 24B, but the district court only analyzed the First. Whether the intervener has a claim or defense that shares with the main action a common question of law or fact. Here, Adler has a claim, an interest recognized at law, in accessing the court records, and by challenging the sealing orders, his claim necessarily shares questions of law and fact with the main action. The court again relies on Davis, saying that it's not a claim, seeking access to court records is not a claim for purposes of Rule 24B. But that's exactly the argument that was made in Newby, and that this court rejected in Newby. They said that's not how you should read Davis, and the court went on to find in Newby that the Texas State Board intervener, seeking access to discovery, had a claim that shared questions of law and fact with the main action. This court also has held repeatedly in rebeef that Rule 24B is the procedurally correct course of action for non-parties seeking access to sealed documents, and thus seeking access to sealed documents in light of your common law right must constitute a claim for purposes of 24B. All other circuits agree that intervening to unseal or to modify a Those cases are cited on pages 38 to 39 of the opening brief. Finally, Adler's motion to intervene was also timely. The district court's timeliness analysis committed several legal errors. The first error was applying the Stallworth factors without taking into account that Adler was seeking relief collateral to the merits. The traditional timeliness requirement doesn't make sense in the context of motions to intervene to unseal because such motions don't disrupt the adjudication of the original party's rights, and unlike claims on the merits, the public's right of access is continuous and can be invoked long after a case is closed. There are countless cases cited on pages 43 to 45 of the opening brief in which courts have granted intervention to unseal years after a case is closed, including an 11th Circuit case, Brown, where the court held that the district court abused its discretion when it denied intervention to unseal, that was a motion to intervene to unseal that was filed six months after the case closed. Team Health still can't cite a single case where a court has denied a motion to intervene solely on timeliness grounds. The supplemental authority that was submitted last week further made clear that in that case they had granted media organizations the right to intervene to unseal a year after the case had closed. The one other intervener came in when they were already in the process of unsealing documents and they said your interests have already been represented. That is not like here where the court said because the case is closed your right of access has Finally, the district court erred, or second, the district court erred in applying the traditional, in calculating the delay under Stallworth. So even applying Stallworth, they measured Adler's delay from when the protective order was entered or when the provisional sealing orders were entered. But this court, relying on the Supreme Court's decision in United Airlines, has held that the delay should be measured from the time that the intervener knew his interests would not adequately be protected. And it was not clear that this court would not fulfill its independent obligation to unseal court records until the case settled and six months later nothing had happened. It's actually quite common for courts to return to the docket after a case closes and say hey should these these records still be sealed. So again, even under the Stallworth factors, under a Adler's intervention was still timely. And finally, the district court erred in assessing prejudice to Team Health by finding that it would force Team Health to re-litigate questions that it reasonably thought were resolved. Team Health did not think that these issues of sealing were resolved. They argued below that a higher standard for sealing would apply later or right before trial. They said at the hearing that they cite, quote, that's just not the point we're yet at yet in this case. That determination will happen either much closer to or at trial. Quote, that's a dispute for another day, quote, they are jumping ahead. So at no point did Team Health think that they had already resolved questions of sealing. They were pushing that issue down the road. And the district court agreed with them and said, I'm not prejudging whether these documents should be sealed at trial but I don't want this case tried in the media so we're going to leave the confidentiality orders in place pending trial. So there are two errors here that the court made. The first was a clearly erroneous assessment of the facts and concluding that Team Health reasonably thought this issue of sealing was resolved. But the second is a legal error. The court's determination that the issue was already litigated is based on an erroneous view that the heightened sealing standard only It applies to court records. As soon as those documents became part of the court record, hundreds of exhibits sealed attached to dispositive motions on the court record, information actually in the court's opinion, parts of the amended complaint are redacted. Then you need to apply the higher standard for sealing and do a document-by-document assessment. So it doesn't just apply to the trial court proceedings, it applies to the court record. So to the extent the district court thought your interests are protected, this issue's been litigated and resolved, that was based on an erroneous belief that the protective order standard could apply to records that are now sealed on the court record. If this court adopts the district court's reasoning below on the question of standing, Rule 24B or timeliness, it will effectively eliminate the public's right of access to court records. Accordingly, this court should reverse the district court and grant Adler's motion to intervene. There are no further questions. I'll reserve the rest of my time for rebuttal. Thank you, counsel. You may proceed. Good morning, your honors, and may it please the court. I'm Linda Coberly representing Team Health and Team Finance and the defendants in this action. We're here on appeal from the most discretionary kind of ruling. It's the denial of a motion for permissive intervention after a case was dismissed with prejudice. Even if the district court could have allowed intervention here, it certainly wasn't required to. Now I'd like to focus first on the timing issue, which I think is the most clear-cut and straightforward path to affirmance here. The court can affirm solely based on the district court's finding of untimeliness. It doesn't have to go farther than that. Rule 24B starts with the words untimely motion. This is a threshold requirement for permissive intervention, and it is inherently fact-specific. The district court here walked carefully through the Stallworth factors, which are the factors that this court has held govern timeliness in the context of permissive intervention, and it applied them to the facts. It can't be an abuse of discretion when the court acknowledged the correct factors and applied them. Now the district court understood Mr. Adler's argument below to be that the Stallworth factors don't apply here at all because this is a case that involves intervention for the purpose of unsealing, and the district court properly rejected that argument. Mr. Adler cites no cases, none, from the Fifth Circuit saying that the Stallworth factors don't apply when an intervener wants to unseal. And we've shown in our briefs that the cases that Mr. Adler cites from other in interventions for the purposes of— On the matter of timeliness, from when the movement would know that his interest is no longer protected, the district court makes no reference to that measurement. It focuses on the time from cases unsealing, and isn't it measured from when the movement would know? The timeliness is measured from when the movement would reasonably know, reasonably should have known, of his interest in the case. That's different from saying it's measured from the time when the movement would know that his personal interests are not protected, which is what Mr. Adler's arguing here. I'm not aware of any case from the Fifth Circuit that articulates the timeliness inquiry the way counsel articulated it. What about the Cameron case, the U.S. Supreme Court case? Doesn't that stand for the same proposition that your opposing counsel is arguing, that it rises at the time that your interests are no longer protected, and not necessarily when you know you have an interest in a case? I don't believe so, Your Honor. I think that we don't want a system, right, where interveners stand by the sidelines and critique the conduct and the arguments that are made by the parties in the case, and wait on the sidelines to decide when they decide they would have made a different argument, and then intervene. That's why what the rule of permissive intervention looks to, when would it have made sense for the intervener to decide that he needed to assert his interest? He had an interest to assert. Here, Mr. Adler articulated in his submissions that he follows Team Health. He follows Team Health's litigation. He has tweeted about litigation that Team Health has faced. Here, it was a matter of public record, all the way back to July of 2020, that pretrial filings were being sealed. It was a matter of public record that in December 2020, the district court was allowing court papers to remain sealed, based on arguments that were made at a hearing in December 2020, the very ones that counsel points to today. And even under Mr. Adler's notion, which is when did he understand that his interests were not going to be protected, there was a public notice in February of 2021 that this case was being settled. And it took months for the case to ultimately be dismissed with prejudice. And yet, at no point during that period, even after public notice, that there was not going to be a trial likely, and that the parties had agreed in principle to a settlement, Mr. Adler still waited. But there was no indication at that time that the documents would not be unsealed, right? Or was that included? Oh, yes. There was every indication that the documents would remain under seal. And that's because the ruling that the court made at the December 2020 hearing was about pretrial findings and the documents that had been designated by the ruling. So what happened in late 2020 is that the relators challenged all of the, or many, of the designations that my client had made under the protective order. The protective order itself, just taking a step even further back, the protective order itself was disputed. And in the end, so this case is actually very much not like the Binho Lee case, for example, where two litigants simply agreed between themselves to keep everything sealed, and the court blessed it. Here, there was a protective order that the relators challenged. They said it granted too much protection. And the court considered arguments and held that Team Health had sufficiently established the likelihood that there would be trade secrets engaged or involved in these materials, and also personal health information, because we are talking about a Medicare suit, Medicare billing suit, which is necessarily about medical treatment provided to individuals. So that's why the court entered the protective order. It was over objection. Secondly, the relators challenged the designations under the protective order, and they did invoke the public right of access. Now, at that time, at the hearing in December 2020, the court said, I'm not going to revisit all of these designations and I'm going to, we will have to wait and see whether we close the trial. But there's nothing in that transcript that says that that court intended to revisit whether sealed court papers would be unsealed in the event of a settlement. That's simply not correct. It's not in the transcript anywhere. Wait and see what we'll do if there's going to be a trial. That means the final determination about sealing or unsealing records was an open question. I mean, a ruling got made to say we're not unsealing it now. Your position is that was final. No more, don't even bring it up again. My position is a little bit different than what the court is articulating. My position is there is nothing in the transcript in which anyone said, we're going to go back and unseal things that have already been filed on the record. There was nothing in the transcript that suggested that would happen. What the court was talking about was whether there was going to be a public trial. Was the courtroom going to be sealed on certain days? And what were the materials that were going to be presented at trial that would need to be protected at that time? That's a different question than what the plaintiffs are seeking now. There was no trial in this case. But things could arise at trial that could result in an earlier ruling being changed. You'll agree with that. It happens all the time at trial. I do agree with that, Your Honor. But what I'm saying is that Mr. Adler is saying today, we expected that the prior rulings were going to be revisited. There's nothing in the record that supports that as a reasonable conclusion. Nothing. There's also nothing to signify that they would not be revisited. I mean, there's no presumption that once records are sealed, that they are sealed indefinitely. There's no presumption that that's the case. That's true, Your Honor. But there's two points I'd like to make in response to that. One is that the test here for timeliness under And secondly, this is a highly fact-specific issue, and it's precisely the kind of issue on which this court defers to the district court, who is actually there in the moment. I think where we differ is reasonably should have known that they had an interest or reasonably should have known that their interests would not be protected. I think that's where you and I are Mr. Adler should reasonably have known that his interests were not going to be protected when it became apparent that there was never going to be a trial. So to your point, Judge Graves, on the idea that sometimes when you have a trial, then we're going to assess whether certain materials presented at trial are going to become public, and maybe that will require reopening or unsealing previous court filings on summary judgment and so forth. Starting in February 21, Mr. Adler reasonably should have known that there wasn't going to be a trial at all. And at that point, there was no reason to believe that prior sealed papers were going to now be unsealed. There was simply no reason in the record that I'm aware of to suggest that anybody thought that was going to happen. It's simply something that counsel is saying today. So at the end of the road here is discretion. This Court has obviously had a lot of concern, and we're aware of that concern, about district court practices in terms of sealing court papers. If this had been raised earlier, if Mr. Adler had intervened or tried to intervene or appealed the sealing orders, as this Court would have allowed him to do, even as a non-party, then this may have played out differently. The parties may well have made different choices about what documents to file on the court record. In their filing of summary judgment, they may have filed shorter exhibits, they may have not filed all the same things. Now, with that issue being raised after the fact, that's part of the prejudice from the untimeliness. When did he know of the Court's unsealing? The unsealing orders were a matter of public record starting in June 2020. And the hearing about the dispute, the hearing that we've spent a lot of time talking about from December 2020, was conducted in an open courtroom, and that took place in December 2020. In February 2021, with a trial approaching, there was a notice of agreement in principle to settle, and the trial was taken off calendar. And then it took months after that for there to be sufficient approvals of the Department of Justice, and finally a dismissal with prejudice, and that was in June 2021. And still, Mr. Adler waited six more months, and he has never provided any reason or justification for even that six-month delay. All of this gives rise to a factual picture that the district court treated within its discretion, and it would be a real departure from this court's cases for the court to say, no, under these circumstances, permissive intervention was required. That's something that this court has not done in the context of permissive intervention. Now, as for Mr. Adler's own prejudice, he has expressed only the most general interest in this information, and I want to point out that the current record under, the current record in this case is not three-quarters under seal. A fraction of the materials in this case are sealed or redacted. And although there are some documents that are sealed in their entirety, there are many others, including the complaint and the amended complaint, including the summary judgment papers, in which public versions have been filed with redactions. And yet Mr. Adler has not, never articulated, not only has he not articulated why he waited at least the six months from when the case was ultimately dismissed with prejudice, if not longer, but he also has never articulated a specific justification other than the most general interest in what happens with this company. The purpose of the public right of access is for members of the public to understand what's happening in the courts. Nothing Mr. Adler has said articulates an interest that the district court was required to weigh heavily in favor of permissive intervention. Again, the most, the most deferential kind of review that this court exhibits. So what could he have done? Because I heard counsel say a couple of times this morning that if the court affirms this ruling, the right of the public to vindicate its right of access will be eliminated. And that's simply not true. This court dealt with this issue at length years ago in the United States versus Chagra, which the appellant's brief cites. In the United States versus Chagra, this court talked about what is the way that members of the public and newspaper organizations can use to vindicate their interests in the face of sealing orders or confidentiality orders. And what it said was this court allows non-parties in that situation to appeal a sealing order under the collateral order doctrine. That's what the court explained in Chagra. That's what the court did in the United States versus Chagra. There was also a discussion in Chagra about the possibility of seeking mandamus. And in fact, Judge Rubin in that case articulated a preference that if the Fifth Circuit were to start over in thinking about how members of the public are to get into the Fifth Circuit to address a sealing order, he would say they should do it through mandamus. And at a minimum, what Mr. Adler should have done here is to intervene earlier, intervene either when the issue is actually being litigated in a fashion that he now says was inadequate, and that is his argument today. His argument today is that the way the rate-relators litigated this issue in December 2020 and the way the court decided the issue in December 2020 was inadequate to protect his interests. All of that happened in the public record. And yet he waited almost two years from that time to intervene. So at a minimum, what he should have done is intervene earlier. But what this court's cases do not allow him to do is to watch from the sidelines and then try to reopen the issue and the case via permissive intervention six months after the case was closed. Parties are entitled to know when their litigation is done. And parties and my client believe this litigation was over in the middle of 2021. And it believed that the issues of whether existing court papers had been sealed and would remain sealed was resolved even before that. Now, again, I understand this court's concern about sealing that's very clear, and it's dicta, but it's very clear and very obviously expressed as a concern by members of this court about the practice of oversealing documents in the district courts. That decision, that Ben-Holi decision, was issued after the sealing orders that were at issue in this case. But this is not the right case to grant relief on that issue. The merits of the sealing orders are not before this court. This court has never suggested that district courts must reopen closed cases to re-examine previous sealing orders. In fact, even in Ben-Holi, the court expressed concern about sealing practices but did not instruct the district court to go back and fix it in that case. It was a prospective concern. And this court certainly hasn't said that district courts must grant requests for permissive intervention in order to unseal. In fact, in Davis, which I haven't discussed at all but obviously pervades our briefs, in Davis, the court said the opposite. It said that an intervention in a closed case simply for the purposes of unsealing is actually improper. The district court here was well within its days to examine the facts under Stallworth and to deny this permissive intervention. And it exercised its broad discretion in doing so. And this court should affirm. Thank you very much. Rebuttal. Your Honors, Team Health talks about how this is a discretionary decision, but there is no dispute that if there are legal errors made in the district court's discretionary determination that that is grounds for reversal. There are two clear errors in timeliness that I want to focus on here. The first is how they measure the delay. Team Health argues that it's not measured from when the movement of the case is that their interests were protected and that they're not aware of any Fifth Circuit case law that says otherwise. But that's false. First of all, you can look at Stallworth. Stallworth talks, cites United Airlines and says we should be looking to when their interests were protected. And then in Sierra Club, this court further held. Your Honor, you can decide this case under the Stallworth factors or independent of them. I think what is important is that you recognize that there is a unique circumstance when someone is moving to unseal on a collateral issue. And that can either be a reason why Stallworth doesn't apply at all or considered under the fourth factor of Stallworth, which says take into account unique circumstances. I don't think timeliness should apply because the reason for that is to prevent prejudice to the adjudication of the original issues. But if this court does believe a timeliness requirement should apply, I think Adler's motion was very timely because he intervened as soon as it became clear that his interests were protected. And there was countless Fifth Circuit case law articulating that standard after Stallworth. And the reasoning of Stallworth supports this view. When did it become clear that his interest wasn't protected? I think it became clear when the case settled and the district court didn't take any action. The notion that he should have been on notice that the case was going to settle. When the case settled and the district court didn't take any action. That's two separate events. So I think several months after a case settles is a fair amount of time to give a district court to review the court record and see if they're going to actually take on their independent duty to unseal. Isn't it measured from when the movement would know that his interests were no longer protected? That's correct, your honor. That is the standard. It's not from the time the case is from the case is unsealing. Correct, your honor. And he didn't know his interests wouldn't be protected by the court, which has an independent obligation to do this until the case settled and the court didn't take any action. He then intervened six months after that happened. With regard to your argument on prejudice to the adjudication of the merit, how do you respond to your opposing counsel's argument that the prejudice is that her client expected finality and was not looking to re-litigate these issues and may have even decided, made different decisions or a different calculus about what documents to actually put into the record? Your honor, I think that's that's wrong on both as a matter of law and as a matter of fact. In Benholly, this court made it extremely clear that no party should be relying on a protective order to assume that that information will remain permanently sealed on the court record. That is entirely contrary to First Circuit law that says that's a completely different standard than what we apply to court records. And the sealing orders, so as a matter of law, that's false, but also as a matter of the court record, that's false. It was very clear that they said that the standard for sealing should apply and be decided later once at trial. It is very common for a district court to say, I don't want this case tried in the media, so I'm not going to unseal these documents yet because I don't want to disrupt a jury trial. But once that jury trial doesn't happen, it becomes clear that the reasons for sealing have dissipated, prejudice to a jury trial, and then there's a need to unseal those documents. This court has been extremely clear that not only does a court need to conduct a document-by-document analysis of information that it's trying to seal on the court record, but it also needs to articulate its findings with respect to each of those documents. None of that applied here. It's incredibly clear that the court didn't follow through with the mandate of Ben Ho'oli to properly review and protect the public's right of access. This court, I think that one demonstrates that the interests of Adler have not been protected and that everything that was marked, basically every document was marked confidential when it was filed under protective order. And then with respect to every one of those documents, there was a boilerplate motion to unseal. Adler has an opportunity, gave the district court an opportunity to fulfill its independent duty by taking action after the court was, the record was sealed. In Stallworth, the decision talks about how we don't want to encourage premature intervention. That wastes judicial resources. We should let courts do their job and unseal court documents. And so by waiting, he actually followed through with the exact mandate of Stallworth and also Sierra Club, where this court said that that's the proper standard when their interests were no longer protected. Thank you. Court will take this matter under advisement. Call the next case, which is